WINDOM, Judge,
dissenting.
I agree with the plurality’s determination that the circuit court erred by failing to instruct the jury that it could only consider Riley’s prior convictions for impeachment purposes. See Ex parte Minor, 780 So.2d 796 (Ala.2000). I also agree with the plurality’s determination that the prosecutor improperly utilized and commented on Riley’s juvenile adjudications. However, based on the overwhelming evidence presented by the State and the nature of Riley’s defense, I disagree that these errors rise to the level of plain error. Rule 45A, Ala. R.App. P. Therefore, I respectfully dissent.
“The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal.” Hall v. State, 820 So.2d 113, 121-22 (Ala.Crim.App.1999). “ ‘ “To rise to the level of plain error, the claimed error must not only seriously affect a defendant’s ‘substantial rights,’ but it must also have an unfair prejudicial impact on the jury’s deliberations.” ’ ” Ex parte Brown, 11 So.3d 933, 938 (Ala.2008) (quoting Ex parte Bryant, 951 So.2d 724, 727 (Ala.2002), quoting in turn Hyde v. State, 778 So.2d 199, 209 (Ala.Crim.App.1998)). That is, “ ‘[t]he *688 plain-error exception to the contemporaneous-objection rule is to be “used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.” ’ ” Ex parte Brown, 11 So.3d at 938 (quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), quoting in turn United States v. Frady, 456 U.S. 152, 163, n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Although the “failure to object does not preclude [appellate] review in a capital case, it does weigh against any claim of prejudice.” Ex parte Kennedy, 472 So.2d 1106, 1111 (Ala.1985).
In Ex parte Minor, the case primarily relied upon in the main opinion, the Alabama Supreme Court held that the circuit court’s failure to give an instruction limiting the jury’s consideration of Minor’s pri- or convictions to impeachment constituted plain error. 780 So.2d 796, 802-04 (Ala.2000). Minor was charged with capital murder for causing the death of his infant son, Ebious. Id. at 797-98. At trial Minor testified in his defense and “maintained that he did not kill Ebious and that he did not strike Ebious in any way.” Id. at 799. During his testimony, Minor was impeached with his prior “convictions for assault in the second degree, for possession of cocaine, and for rape in the second degree.” Id. At the conclusion of the trial, the circuit court did not instruct the jury that it could only consider Minor’s prior convictions for impeachment. Id.
The Alabama Supreme Court held that the circuit court erred in failing to sua sponte instruct the jury that it could only consider Minor’s prior convictions for impeachment purposes. Specifically, the Supreme Court stated:
“The trial court did not tell the jury that the evidence of Minor’s prior convictions could not be considered as substantive evidence that he committed the crime charged. Because the jurors were not so instructed, they were free to consider the prior convictions for any purpose; thus, they could consider the probability that Minor committed the crime because he had demonstrated a prior criminal tendency.”
Id. at 803. The Supreme Court went on to hold that the “presumptively prejudicial nature of evidence of a defendant’s prior convictions” coupled with the possibility that the jury considered Minor’s prior convictions as substantive evidence because it has not been given a limiting instruction constituted plain error. Id. at 804.
In Snyder v. State, 893 So.2d 482, 485 (Ala.2001), the Aabama Supreme Court explained that its decision in Ex parte Minor did not create a per se rule requiring reversal when a limiting instruction was not given on the use of evidence of prior convictions. Instead, the failure to give a limiting instruction must be reviewed on a case-by-case basis. Ex parte Martin, 931 So.2d 759, 768 (Ala.2004); Snyder, 893 So.2d at 485; see also Johnson v. State, [Ms. 1041313, Oct. 6, 2006] — So.3d, —, — (Ala.2006) (“This Court in Snyder limited the holding of Ex parte Minor by stating that although the Court in Ex parte Minor found ‘plain error in the trial court’s failure to instruct the jury on the purpose of the evidence of Minor’s prior conviction, the Court’s holding in that regard did not establish a per se rule’ regarding such evidence and that ‘each inquiry regarding the propriety of an instruction on the use of evidence of prior convictions presented for impeachment purposes must be determined on a case-by-case basis.’ ”) (quoting Snyder, 893 So.2d at 485). Applying a case-by-case analysis as mandated by the Alabama Supreme Court, I must conclude that the circuit court’s failure to limit the jury’s consideration of Riley’s prior convictions *689 and the prosecutor’s comment did not constitute plain error.
As the plurality details, the evidence presented at trial overwhelmingly established Riley’s guilt. First and most damning, Riley’s crime was captured on the package-store surveillance video. The video depicts Riley entering the store and calmly robbing the store clerk. When a customer enters the store, Riley calmly conceals his weapon, allows the customer to make a purchase, then allows the customer to leave. Once the customer is gone, Riley proceeded with the robbery. He then forces the store clerk into a back room outside the view of the surveillance camera.
Although the events that took place in the back room of the store cannot be seen on the video, they can be heard. After Riley forces the clerk into the back room, he fires a shot and the clerk can be heard screaming in pain. After a pause, Riley fires a second shot. After another pause, Riley fires a third shot. Having just shot the clerk three times, Riley then calmly proceeds into the main area of the store and collects two videos from the store surveillance cameras. He then calmly leaves the store with the proceeds of his robbery.
The State presented evidence indicating that the semiautomatic pistol Riley used to shoot the clerk malfunctioned. Specifically, the weapon would not properly load a new cartridge into the chamber after the pistol had been fired. Because of this defect, after firing a shot, the shooter would have to manually manipulate the firearm to ready it to fire the next shot. This evidence explained the pauses between each of the three shots that can be heard on the surveillance video.
In addition to the surveillance video, Riley admitted to robbing and to murdering the clerk. After the crime, Riley admitted to Doug Sanderfer that he had robbed and murdered the clerk of the package store. Riley informed Sanderfer the he had robbed the clerk at the package store and that during the robbery a customer had entered the store. He informed Sanderfer that he had allowed the customer to leave without incident and then had shot the clerk three times.
The State also presented evidence of telephone conversations Riley had while in jail awaiting trial. In one conversation, Riley explained to his stepmother that “one tape is what screwed everything up for him.” Johnson, 48 So.3d at 674. In other conversations, Riley attempted to orchestrate getting his story straight with other individuals and attempted to relay a message to one of the State’s witnesses to stop running her mouth.
Based on the overwhelming evidence of guilt, the prosecutor’s improper comment and the circuit court’s failure to instruct the jury regarding the purpose for which prior convictions could be considered did not rise to the level of plain error. Rule 45A, Ala. R.App. P. See State v. Hebert, 158 N.H. 306, 317, 965 A.2d 1059, 1067 (2009) (holding that the failure to sua sponte instruct the jury regarding its use of prior-conviction evidence was harmless in light of the overwhelming evidence of guilt); United States v. Cooper, 942 F.2d 1200, 1205 (7th Cir.1991) (holding that the failure to give a limiting instruction regarding the use of the defendant’s prior conviction was not plain error based on the overwhelming evidence establishing the defendant’s guilt); State v. Lair, 62 N.J. 388, 301 A.2d 748 (1973)(finding that the failure to give a limiting instruction regarding the use of prior-conviction evidence did not constitute plain error, “base[d] very largely upon the overwhelming nature of the testimony pointing to defendant’s guilt and the relative insignifi- *690 canee of the testimonial references to his prior convictions”). With an ironclad case of guilt, I am convinced beyond a reasonable doubt that the result of the trial would have been the same without the admission of the prior convictions or without the prosecutor’s comment. Ex parte Price, 725 So.2d 1063, 1072 (Ala.1998) (holding that because the State presented overwhelming evidence of guilt, the erroneous admission of evidence did not rise to the level of plain error); Ivery v. State, 686 So.2d 495, 507 (Ala.Crim.App.1996) (holding that a prosecutor’s improper conduct during his closing argument did not amount to plain error in light of the overwhelming evidence establishing guilt). Accordingly, I disagree with the plurality’s decision to reverse Riley’s conviction.
More importantly, in light of the defense Riley presented, allowing the jury to consider his prior convictions for purposes other than impeachment and the prosecutor’s comment regarding the State’s failure to rehabilitate Riley did not affect Riley’s substantial rights or have an unfair prejudicial impact on the jury’s deliberations. See Ex parte Brovm, 11 So.3d at 938. Riley admitted committing the robbery and causing the clerk’s death. He argued, however, that he did not intend to kill the clerk. Specifically, Riley testified that he was addicted to drugs, that he owed his drug dealer money, and that he robbed the package-store clerk to pay his drug dealer. Riley further asserted that he had ingested drugs shortly before the robbery/murder. He then testified that he was on drugs during the robbery and that the first shot was an accident. According to Riley, after the first accidental shot, he blacked out and does not remember shooting the clerk a second and a third time. Thus, Riley’s defense centered on his assertion that the first shot was an accident and the second and third shots were the result of a drug-induced blackout; therefore, he was guilty of felony murder, not capital murder.
The fact that Riley had been convicted of theft and burglary (two crimes in which no one was injured) supported his assertion that he was addicted to drugs, that he committed the robbery to support his drug addiction, and that he did not intend to kill anyone. See United States v. Rutherford, 323 F.Supp.2d 911, 914 (E.D.Wis.2004) (recognizing that “drug addiction and crime go hand-in-hand”); People v. Miller, 233 Cal.App.3d 1551, 1555, 285 Cal.Rptr. 410, 412 (1991) (“Narcotics addiction and crime go hand in hand. Addiction breeds crime.”). Likewise, the prosecutor’s comment that the State had unsuccessfully attempted to rehabilitate Riley supported Riley’s assertion that he was hopelessly addicted to drugs. Because Riley’s defense centered around his bad character, i.e., drug addiction and willingness to commit nonfatal crimes to support that addiction, allowing the jury to consider his prior convictions for theft and burglary (nonfatal crimes) and the prosecutor’s comment regarding the State’s failed attempts at rehabilitation actually supported Riley’s defense. Therefore, the circuit court’s failure to limit the jury’s considerations of this favorable evidence and the prosecutor’s comment did not seriously affect Riley’s substantial rights, have an unfair prejudicial impact on the jury’s deliberations, or result in a miscarriage of justice. Ex parte Brovm, 11 So.3d at 938.
Finally, as discussed above, Riley’s defense relied on his bad character, i.e., his drug addiction and his willingness to commit crimes to support that addiction. Riley established his bad character by admitting to the robbery and alleging that the robbery was drug-related. The only question Riley left for the jury to decide was whether he was guilty of felony murder (unintentional murder) because the mur *691 der was committed as a result of a drug-induced blackout or of capital murder (intentional murder).[1] Because Riley admitted committing the robbery, the unchecked admission of his prior convictions for theft and burglary did not have an unfair impact on the jury’s deliberations. Compare Hebert, 158 N.H. at 817, 965 A.2d at 1067 (holding that the failure to instruct the jury regarding the limited purpose for which it could consider prior convictions was harmless when the defendant did not deny involvement in the offense and the jury was only asked to decide between two versions of the same event), with Ex parte Minor, 780 So.2d at 802-04 (holding that the circuit court’s failure to give a limiting instruction regarding prior convictions constituted plain error in a case where the defendant maintained that he did not strike his child or cause his child’s death); cf. Barnes v. State, 727 So.2d 889, 843 (Ala.Crim.App.1998) (holding that the admission of evidence indicating that the defendant in a capital murder (murder/burglary) trial had unrelated outstanding warrants for burglary was not prejudicial because the defendant admitted committing the burglary, thus leaving the jury only to decide between felony murder and capital murder); Brown v. State, 11 So.3d 866, 905-06 (Ala.Crim.App.2007) (same). Therefore, Riley has not established that the failure to give a limiting instruction affected the outcome of his trial or constituted plain error. Rule 45A, Ala. R.App. P.
With overwhelming evidence establishing Riley’s guilt and given the fact that the evidence and comments complained about supported Riley’s defense, I do not believe that the circuit court’s failure to instruct the jury regarding the prior convictions or the prosecutor’s comment had an unfair prejudicial impact on the jury’s deliberation or resulted in a manifest injustice. Ex parte Brown, 11 So.3d at 938. Accordingly, Riley has failed to establish plain error, and his conviction should be affirmed. Therefore, I respectfully dissent.

. Riley’s allegation that he accidentally shot the clerk once then blacked out and did not remember anything else until the next day was refuted by his own testimony. During his testimony, the prosecutor asked Riley about the gun used in the robbery/murder. (R. 713.) Specifically, the prosecutor asked: "Isn’t that the gun? You left that store and took it to — after going to the tree house and gave it back to Dewon to hide it?” Riley responded that he "left it in Dewon's hands out in the parking lot.” The prosecutor then asked: “At his house, right?” Riley corrected the prosecutor and stated, "Out in the parking lot.” (R. 713.) The fact that Riley was acutely aware of the events that occurred in the parking lot of the package store immediately after the robbery/murder refutes his testimony that after the first shot, his mind went blank and he does not remember anything.